2024 IL App (1st) 240768-U

SECOND DIVISION
August 16, 2024

No. 1-24-0768B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 241100954 |
| | ) | |
| SHAWN WALKER, | ) | Honorable |
| | ) | William Nicholas Fahy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Affirming the trial court's order denying pretrial release, where the State sustained its burden of showing clear and convincing evidence that defendant committed a detainable offense, that he poses a safety threat, and that no condition or combination of conditions could mitigate that threat.

¶ 2    Defendant, Shawn Walker, appeals the trial court's order granting the State's motion for pretrial detention. The record shows that defendant was charged with unlawful use or possession of a weapon based on allegations that on or about March 22, 2024, he knowingly possessed a machine gun in violation of 720 ILCS 5/24-1(A)(7) (West 2022).

¶ 3    On March 22, 2024, the State filed a verified petition for pretrial detention. That same day, the trial court held a hearing on the State's motion.[1] At that hearing, the State proffered that

> "[o]n March 21, 2024, at approximately 11:02 p.m., at 4439 North Bernard Street officers received a call of a concerned citizen with individuals in his yard at 4439 North Bernard Street with handguns and a rifle.
>
> The witness advised that these individuals were moving from the front yard to the backyard of the residence. Police arrived on the scene. As they arrived on the scene, they observed five male Black individuals who began to flee on foot. Officers initially lost sight of them and began touring the area.
>
> While touring the area, one unit saw three potential suspects *** running near the yard at the residence of 4452 North Kimball. The subjects entered the yard in front of the residence and went into the backyard of the residence. Officers were surrounding the residence in an attempt to detain these individuals. Officers ordered them to stop and were able to stop [co-]defendant Myvette. Defendant Walker and another juvenile subject jumped the fence into another yard but were ultimately detained. When defendant Walker was detained, he provided a false name to police initially.
>
> ***

---

[1] Defendant's pretrial detention hearing was conducted simultaneously with that of co-defendant Nigel Myvette. Co-defendant Myvette is not a party to this appeal.

Officers searched the immediate area for firearms or weapons and *** in a nearby residence [they] recover[ed] a backpack. A *** black and white backpack with distinctive sharp teeth design.

The officers recovered from inside that backpack a loaded black Glock 19 9MM semiautomatic pistol with a green handle. The pistol had an automatic switch attachment and an extended magazine and was loaded with one live round in the chamber.

The backpack also contained four Ziploc bags containing green leafy substance suspect cannabis. The officers made contact with the initial witness in this case who advised he had security cameras set up on his property. The officers reviewed the footage from the security cameras and observed defendant Walker wearing the same clothes that he was *** detained in. Be that a puffy jacket, faded jeans and white gym shoes. And he was wearing the black and white sharp teeth backpack that the officers recovered in the security camera footage.

¶ 4     The State further asserted that defendant's criminal history consisted of three juvenile adjudications for armed robbery with a firearm that were committed within days of each other in January 2023. In those cases, defendant, along with other unknown offenders, "would come up behind these individuals on the street, put a gun to them and demand their valuables, which included cell phones and wallets." In all three cases, defendant was adjudicated delinquent. The State advised the court that defendant turned 18 in August 2023, and he had "now picked up a fourth gun related offense." Defendant also had a warrant from juvenile court that was currently

before the court. The State also advised the court that defendant had served time in the Illinois Department of Juvenile Justice, but it did not know how much time was served.

¶ 5    Based on the above, the State argued that the proof was evident or presumption great that defendant committed aggravated unlawful use of a weapon. In particular, the State argued that officers were able to match defendant's clothing and the distinct backpack that was found, to the backpack and clothing defendant wore in the security footage. The State also argued that defendant posed a real and present threat to the safety of the community based on the evidence showing he possessed a machine gun, and ran from the police, discarding the gun on the streets of Chicago. The State further argued that defendant's prior adjudications showed that he "went on a robbery spree," and those previous adjudications "did not deter him from continuing to possess illegal firearms." The State argued that no condition or combination of conditions could mitigate the risk that defendant presented to the safety of the community, pointing out that he is "currently on some sort of parole in the juvenile system, which he disregarded by illegally possessing a machine gun."

¶ 6    Defense counsel responded, arguing that the State failed to meet its burden of showing by clear and convincing evidence that defendant possessed the firearm or "that he had the requisite knowledge and ability and intent to control" the firearm. Counsel pointed out that the officers never observed defendant with a firearm in person or in the video, and instead, he was only connected to the firearm through the backpack. Counsel stated, however, that the evidence did not show "how close the backpack was found to" defendant, and speculated that there "might be multiple versions of the backpack." Counsel further stated that the was "no allegation that [defendant] ha[d] continuous control over this backpack," and it was "possible that at some point [defendant] had that backpack" but that during an "intermediary time" someone else "may have put a firearm in that backpack."

4

¶ 7     Defense counsel further contended that defendant did not pose a danger to a person or the community because he was not observed taking the firearm out of the backpack or holding it. Defense counsel argued that it was not a violent offense because defendant was not seen "actually brandishing the firearm."

¶ 8     Finally, defense counsel argued that there were conditions of release that could be appropriate in this case. Defense counsel stated that defendant could comply with electronic monitoring and there was "no allegation that he has a history of escaping electronic monitor[ing] before." Counsel stated that defendant did not have "any current pending cases" and he was not on parole. Defense counsel stated that "Out of his three juvenile adjudications, it appears two of them are closed. One of them is a probation matter. That may be what the warrant is in relation to. He has been on probation there for the past year it appears."

¶ 9     Defense counsel told the court that defendant was originally on electronic monitoring and it was removed, so counsel believed electronic monitoring had "worked in the past" and "[i]t looks like he has done well when he has been on probation." Defense counsel told the court that defendant's mother was present in court and she reported that defendant was living with her when he was on electronic monitoring and defendant "did well." Defense counsel told the court that defendant still lives with his mother and "she needs him home because he helps with the siblings and helps take care of them. He has two younger siblings. He also has a one-year-old who he helps support." Finally, defendant counsel further stated that defendant is "in the process of reenrolling in high school for 12th grade," that he participates in a "hybrid job development probation type program," and that he is employed at Fed Ex, working three nights per week.

¶ 10    In ruling, the circuit court found that the offense of aggravated unlawful use of a weapon is a detainable offense under the Pretrial Fairness Act. The court stated that it was taking into

consideration the State's proffer as well as the "excellent points raised by the defense with regards to possible issues regarding possession." The court explained that the defense raised several points "in regards to the issue of possession, which may be very genuine issues down the road at trial," however, "[w]e are not at trial." Based on the State's proffer, the court believed that the "circumstantial evidence does show that the defendant was in possession of the firearm." The court explained:

> "What I have before me is that *** around midnight of March 22 of 2023, law enforcement responded to a person with a gun call. Law enforcement arrived. They see a group matching the description. All of them, *** I believe all of them flee. Law enforcement loses sight of those individuals but continue[s] to tour the area. [A] [s]hort time later, they do see three of those individuals.
>
> Those individuals again flee from police. Ultimately, the defendant is detained *** near that area of 4250 or 4252 North Kimball. *** Shortly after the defendant was detained, they recovered a backpack, which has a distinctive design. *** Law enforcement did recover a backpack that was in the direction of where the defendant had fled or close to where he was arrested. Inside of that backpack with a distinctive design was a loaded machine gun with an extended magazine. Law enforcement viewed video security that was taken just prior to the recovery of the backpack. It showed the defendant in the same clothing that he was wearing when he was arrested wearing that same backpack that contained a loaded machine gun."

¶ 11    Next, the court considered whether defendant posed a real and present threat to the safety of any person or persons or the community. The court noted that the nature and circumstances of the offense involved:

> "an 18-year-old [in a] densely populated residential area on the north side of Chicago with a backpack containing a loaded machine gun. I have to take that into consideration and I also have to take into consideration the defendant's criminal history, which there's none because he is 18. However, there are three armed robbery adjudications of guilty from 2023.
>
>    So there's three separate armed robbery findings of delinquen[cy]. And here now in 2024 [he] is possessing a loaded machine gun. Given the totality of what I have heard, I do believe that the defendant [poses] a real and present danger to the safety of others should he be released."

¶ 12    The court then contemplated whether any condition or combination of conditions could mitigate that threat.  The court explicitly considered

> "not just the issues raised by the defense with regards to possession but the fact that the defendant is 18 years of age. He has support here in court. His mother is here in court. Apparently, he is helpful with his mother at home. He had previously done some time on [electronic monitoring] when he was a juvenile. And he is in the process of reenrolling in school. I have weighed all of the mitigation that's been presented by the defense. I have taken into consideration the nature and circumstance of this offense, which the court finds very troubling. An 18-year-old who was just recently adjudicated for three separate armed robberies is in possession of a loaded machine gun. A

weapon that belongs on the battlefield in the hands of a well-trained soldier,

not in the hands of an 18-year-old in a densely populated area."

¶ 13    In light of the above, the trial court found electronic monitoring to be "willfully [in]adequate for a case like this" based on the "recency of three separate crimes of violence" and "the type of weapon that the defendant [chose] to arm himself with." The court explained that electronic monitoring "is far from [f]ail safe" and the court did not believe it would "prevent this defendant from committing the crimes of violence or possessing firearms." Accordingly, the court granted the State's petition for pretrial detention. The trial court entered a written order on the same day, consistent with the above findings.

¶ 14    Defendant filed a timely notice of appeal on April 4, 2024. Utilizing the form approved for Rule 604(h) appeals by defendants, defense counsel checked three boxes, and submitted a "supplemental document," expounding on those three claims of error. Defendant first asserted that the "State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." Defendant specifically argued that the State failed to show that he "had immediate and exclusive control over the backpack that contained the firearm," because he was not wearing the backpack when he was arrested, and the police did not see him discard the backpack. Defendant further argued that the security footage was insufficient to establish defendant's possession because "[t]he State did not proffer how much time had passed between when the events on the camera footage were taken and when the backpack is recovered later."

¶ 15    Defendant also checked the box asserting that the "State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any

person or persons or the community, based on the specific, articulable facts of the case." In his supplemental document, defendant wrote,

> "In this case, the State has failed to meet its burden because the specific articulable facts of this case do not show that [defendant] poses a danger.
>
> [Defendant] was only alleged to have possessed the firearm but not to have used it in any manner. The only allegation is that the firearm was in a backpack that he at some point had on his back. There is no allegation that he was seen using the firearm in any manner, brandishing the firearm, or threatening with the firearm. Mere possession of a firearm, without any other allegations of violent or dangerous behavior, is not sufficient to find a real and present threat to safety."

¶ 16    Finally, counsel checked the box stating that the "State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case ***." In the space below, counsel wrote that the State

> "did not meet its burden to demonstrate by clear and convincing evidence why pretrial monitoring, pretrial services, electronic monitoring, or any other conditions of release less restrictive than incarceration would not mitigate any risk to specific persons or the community. The [S]tate did not proffer any charges for escape in his history. "

¶ 17    Thereafter, on July 3, 2024, defense counsel filed a notice of intent not to file a Rule 604(h) memorandum in this appeal. Counsel asserted that, after reviewing the record, counsel "concluded the notice of appeal with the attached supplement adequately communicates the defendant-

9

appellant's contentions of error relevant to the resolution of the appeal. Defendant-appellant elects to stand on the notice of appeal and will not file a Rule 604(h) memorandum"

¶ 18　Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). Upon the filing of a petition requesting an order denying a defendant's pretrial release, it is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004). Although the applicable standard of review in a pretrial detention appeal has been the source of considerable disagreement in the Illinois appellate court (see *People v. Miller*, 2024 IL App (1st) 240588, ¶ 27), we need not resolve which standard of review applies in this case, as the result would be the same under any standard.

¶ 19　As stated above, defendant first contends that the State failed to meet its burden by proving by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the offense charged.

¶ 20　Defendant is charged with unlawful use or possession of a weapon in violation of 720 ILCS 5/24-1(A)(7) (West 2022), which provides that a "person commits the offense of unlawful use of weapons when he knowingly *** possesses *** a machine gun." Possession may be either actual or constructive. To show actual possession, the State must show that the contraband was "in the immediate and exclusive control of [the] defendant" (*People v. Frieberg*, 147 Ill. 2d 326, 360

(1992)), and the State may show actual possession through acts such as hiding or trying to dispose of the contraband (*People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007)). Constructive possession, by contrast, exists where the defendant had knowledge of the presence of the weapon and exercised immediate and exclusive control over the area where the weapon was found. *People v. Jones*, 2023 IL 127810, ¶ 30. Knowledge and possession are factual questions to be resolved by the trier of fact. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 25. "Where possession is proved, the element of knowledge may be inferred from the surrounding facts and circumstances, and both knowledge and possession may be proved by circumstantial evidence." *People v. Eiland*, 217 Ill. App. 3d 250, 260 (1991).

¶ 21    Here, the State's proffer established that at 11:02 p.m., police received a call from a concerned citizen that there were individuals in his yard with handguns and a rifle. Police responded to that call, and the arrest report, which is included in the record on appeal, shows that defendant was arrested just over an hour later, at 12:03 a.m. The arrest report also indicates that after defendant was arrested, responding officers searched the "immediate area," and found a backpack "with [a] distinctive shark teeth design," with a loaded black Glock 19 9MM semiautomatic pistol inside. The officers then viewed security camera footage from the concerned citizen's property, and observed defendant wearing the same clothes that he was wearing when he was detained, as well as the distinctive backpack. The evidence also shows that defendant fled from police, and once apprehended, gave police a false name, both of which are factors suggesting consciousness of guilt. *People v. Harris*, 225 Ill. 2d 1, 23 (2007) ("as a general matter, *** both evidence of flight and the use of an assumed name may be admissible as proof of consciousness of guilt."). This evidence suggests that defendant possessed the machine gun that was found inside the backpack, and that he discarded it during his flight.

¶ 22　Although the trial court recognized that defendant may have some arguments at a trial to attempt to dispute his possession of the weapon, at this stage, the State does not need to prove defendant's guilt beyond a reasonable doubt. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 13. Instead, the State need only show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence" (725 ILCS 5/110-6.1(e)(1) (West 2022)). Based on the facts presented here, we agree with the trial court's conclusion that the evidence was sufficient to sustain the State's burden of showing clear and convincing evidence that defendant committed the offense charged.

¶ 23　Next, defendant argues that the State did not prove by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community. Defendant argues that he was not seen holding or brandishing the firearm, and claims that "mere possession *** is not sufficient to find a real and present threat to safety."

¶ 24　Pursuant to 725 ILCS 5/110-6.1(g), the circuit court may consider various factors in determining whether a defendant poses a real and present threat to the safety of any person or persons or the community. Those factors include the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, [or] involv[ed] a weapon"; the "history and characteristics of the defendant" including "prior criminal history indicative of violent, abusive or assaultive behavior," specifically, including evidence from "juvenile proceedings"; "[w]hether the defendant is known to possess or have access to any weapon or weapons"; and "[w]hether, at the time of the current offense or any other offense or arrest, the defendant was on probation ***." *Id.*

¶ 25　Here, the nature and circumstances of the offense demonstrated that the 18-year-old defendant was in a densely populated residential area on the north side of Chicago with a backpack

carrying a loaded machine gun. Defendant's prior criminal history included three juvenile adjudications for armed robberies committed within days of each other in January 2023. In those cases, defendant approached individuals from behind on the street, put a gun to them and demanded their valuables. Moreover, defendant is clearly "known to possess or have access to any weapon or weapons," as this is his fourth gun related offense in just over a year. And the firearm defendant possessed in this case was a machine gun, which our supreme court has recognized belongs to "a category of dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes." *Wilson v. County of Cook*, 2012 IL 112026, ¶ 46 (internal quotations omitted); see also *People v. Ross*, 229 Ill. 2d 255, 275 (2008) (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*"). Finally, the record indicates that defendant was on probation at the time that he was found in possession of the firearm in this case. Based on analysis of the statutory factors under the circumstances here, we agree with the trial court's conclusion that defendant poses a real and present safety threat.

¶ 26    Finally, defendant argues that the State did not meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate that threat, based on the specific articulable facts of the case. Defendant's only specific argument on this point, however, is that he does not have "any charges for escape in his history."

¶ 27    The trial court here specifically considered and rejected defendant's argument that electronic home monitoring and pretrial services monitoring would mitigate the real and present threat he posed to the community. The court found the nature and circumstances of the offense "very troubling," and that electronic monitoring was insufficient to mitigate the safety threat posed by defendant based on his three prior armed robbery adjudications and "the type of weapon that the defendant [chose] to arm himself with" during this offense. Additionally, and as stated above,

the record shows that defendant was on probation at the time of this offense. Defendant's demonstrated history of failing to abide by prior conditions placed upon him, by possessing a weapon while he was prohibited from doing so, further suggests that continued detention is necessary to avoid the safety risk posed by defendant. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33. Based on the evidence in the record, we agree with the trial court's conclusion that no condition or combination of conditions could mitigate the safety threat posed by defendant, and that pretrial detention was necessary.

¶ 28    For the foregoing reasons, we find no error in the trial court's decision to grant the State's petition for pretrial detention, and we affirm the judgment of the circuit court of Cook County.

¶ 29    Affirmed.