2024 IL App (1st) 240762

SECOND DIVISION
September 6, 2024

No. 1-24-0762B

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18CR1526 |
| | ) | |
| VINCENT DAVIDSON, | ) | Honorable |
| | ) | Joanne F. Rosado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Vincent Davidson, appeals the trial court's order denying his motion to vacate his pretrial detention based on the State's allegedly untimely petition, and to reinstate a prior bond order which he had been previously granted in 2020 and 2021.

¶ 2 The record shows that defendant is charged with first degree murder, attempted first degree murder, and aggravated battery with a firearm. The charges generally allege that on October 1, 2017, defendant discharged a firearm killing Tommie Jones and causing great bodily harm to Eriana Wordlow.

¶ 3      On December 28, 2017, defendant was charged by complaint, and the trial court ordered defendant held in custody without bail. Defendant was indicted by a grand jury on January 29, 2018.

¶ 4      On August 7, 2020, defendant filed a motion to reconsider the no bail order from December 28, 2017, based in large part on the exigency of COVID-19 pandemic, and concerns about outbreaks in the Cook County Department of Corrections. Defendant also argued that the order denying bond was entered without a verified petition filed by the State, and, pursuant to *People v. Gil,* 2019 IL App (1st) 192419, defendant alleged that he was entitled to release with a cash bond.

¶ 5      On August 25, 2020, following a hearing, the trial court granted defendant's motion, and imposed a $300,000 deposit bond. Defendant later paid a deposit and was released on March 5, 2021.

¶ 6      Less than three months later, on June 1, 2021, while out on bail, defendant was arrested and charged with unlawful use of a weapon by a felon (UUWF). The evidence underlying that charge showed that defendant was pulled over by police for a traffic violation. Officers smelled alcohol in the car, and observed a container of clear alcohol in the cupholder, as well as an open bottle in the backseat. Defendant was argumentative with the officers, and the officers removed him from the vehicle, patted him down, and searched the vehicle. Officers recovered a Glock 43 from the middle console. Also on June 1, 2021, the State filed a petition for violation of bail bond (VOBB), based on the above arrest.

¶ 7      On August 1, 2021, the complaint was *nolle prossed*, and the State withdrew the VOBB petition on August 20, 2021. Defendant was released back on his prior bail. On September 7, 2021, the State charged defendant by indictment 21CR1162301 with UUWF and aggravated unlawful use of a weapon.

¶ 8     About one month after this release on bond, defendant was arrested again on September 19, 2021, and charged with another count of UUWF. The evidence underlying that charge showed that defendant was pulled over for another traffic violation. Defendant got out of the vehicle holding cannabis in his hand. Defendant was handcuffed, officers searched the vehicle, and recovered a firearm in the trunk. That same day, defendant had his first appearance, and the court set a $200,000 cash bond. The complaint was later superseded by indictment 21CR1350601.

¶ 9     Also on September 19, 2021, the State filed two VOBBs in petitioner's murder case based on the two UUWF cases. On that same date, the trial court held a hearing and ordered defendant to be held without bail. Defendant has remained in custody since that date.

¶ 10    Thereafter, on October 17, 2023, the trial court granted defendant's motion to suppress the firearm evidence Case No. 21CR1162301, and, on December 11, 2023, the trial court granted defendant's motion to suppress the firearm evidence in Case No. 21CR1360501. After the suppression orders, the State elected to *nolle prosequi* both cases.

¶ 11    On December 12, 2023, the trial court considered defendant's oral motion for release back on the bond that was in place prior to September 19, 2021, based on the two UUWF cases being *nolle prossed*. The State responded that the evidence still supported a determination that defendant violated his bail bond, and the suppression of the firearm evidence "does not automatically mean that there was no violation of bail bond." The trial court agreed with the State, and held that the "VOBBs will stand" and that defendant would remain detained. Defendant requested a continuance to file a written motion to address the issue of his continued detention.

¶ 12    On the next court date, December 20, 2023, the State filed a petition to deny defendant pretrial release under the Pretrial Fairness Act (Act) and a memorandum arguing for continued detention under the VOBB order under the previous version of 725 ILCS 5/110-6. Defendant did

not file a written motion, and instead moved to proceed *pro se*. After admonishing defendant regarding his right to counsel, including the nature of the charges and possible penalties, and ensuring that the decision to proceed *pro se* was being made knowingly and voluntarily, the court granted defendant's motion to proceed *pro se* and continued the matter for defendant to file a written bond motion.

¶ 13    Thereafter, on January 17 and 24, 2024, defendant filed two motions to reinstate bail. In those motions, defendant argued the VOBBs were "resolved" by the trial court's order suppressing the firearm evidence. Defendant also argued that he was entitled to release under section 5/110-6 of the Act, which provided:

> "If the case that caused the revocation is dismissed, the defendant is found not guilty in the case causing the revocation, or the defendant completes a lawfully imposed sentence on the case causing the revocation, the court shall, without unnecessary delay, hold a hearing on conditions of pretrial release pursuant to Section 110-5 [of the Code (725 ILCS 5/110-5 (West 2022))] and release the defendant with or without modification of conditions of pretrial release."

¶ 14    On January 29, 2024, the trial court denied defendant's motions to reinstate bail and granted the State's petition to deny defendant pretrial release. Regarding defendant's motions, the trial judge explained that she was the judge who had heard defendant's motions to suppress the firearm evidence in the two UUWF cases. The court articulated the evidence underlying those charges, and explained that her decision to suppress the firearm evidence was based on the constitutionality of the search, but that it was "clear from both of the cases that I heard that [defendant] was in fact found to be illegally in possession of a gun." The court further stated that,

although it had suppressed the firearm evidence in those cases, the court could still consider those cases as to defendant's "propensity to carry a weapon."

¶ 15     Based on the State's "verified petition [and] the proffered evidence," the court found clear and convincing evidence that defendant committed the detainable offenses of first degree murder and attempted first degree murder. As to defendant's dangerousness, the court explained:

> "[i]t is clear from the facts in this case that [defendant] is on a city street of Chicago, he opens fire on two individuals, striking one five times, striking the other one time, resulting in one death as well as one serious injury.
>
> Not only that, on top of that, we have the fact that while out on bond for the first degree murder and attempt[ed] murder, he possesses two guns at two different times. Although those guns were suppressed, I'm considering those to go to his propensity for violence, for his propensity to carry weapons upon himself, for the fact that he was on bond when he picked up these cases, and to acknowledge the fact that he is in fact a danger to the community at large.  He clearly has no problem with going on a city street with a gun, he's done it not only in the murder case, but also as well as in the two cases *** where he was found to have a gun."

¶ 16     The court further found that no conditions of pretrial release could mitigate the real and present threat posed by defendant.

¶ 17     The court then admonished defendant that he had the right to appeal the detention order, and that to do so, he must file a notice of appeal within 14 days. Defendant stated that he intended to appeal, and repeated the court's instruction that he had 14 days to file an appeal.  The court agreed.

5

¶ 18    Following the hearing, the trial court entered a written order granting the State's petition to deny defendant pretrial detention.

¶ 19    Defendant did not file a timely notice of appeal within 14 days from the trial court's order. Instead, almost 6 weeks later, defendant filed a *pro se* notice of appeal on March 8, 2024, purporting to appeal from the trial court's January 29, 2024, order. The trial court found defendant's notice of appeal to be untimely on March 15, 2024.

¶ 20    Meanwhile, on March 6, 2024, defendant orally moved to "vacate the pretrial detention order due to the State's untimely petition, withdrawal of the violation of bail bond, and reinstate the bail bond." Because defendant had not filed a written motion, the matter was continued to March 13, 2024.

¶ 21    Later on March 6, 2024, defendant filed a written motion entitled "Affidavit of Fact, Demand to Vacate Pretrial Detention Order for State's Untimely Petition and Withdraw VOBB and Reinstate Bond." Defendant contended that section 5/110-6 set out the timeframe under which the State may file a verified petition, and that the State's verified petition in this case was untimely.

¶ 22    On March 13, 2024, the trial court held a hearing on defendant's motion. The court began the hearing by asking if, based on his March 6, 2024 filing, defendant was "requesting a review of the previous detention order." Defendant responded, "Yes."

¶ 23    The court asked the Assistant State's Attorney (ASA) if defendant had a PSA score, and the ASA responded, "Yes, *** new criminal activity scale 5, failure to appear scale 4. This PSA was done on December 28 of 2017. The release recommendation at that time was if released, maximum conditions."  The State then repeated the factual proffer regarding the murder charge, and went through defendant's criminal background, which included a 2011 felony conviction for forgery, for which he served two years in the Illinois Department of Corrections; and in 2006,

defendant received felony probation, which was terminated satisfactorily, for the manufacture and delivery of a controlled substance. Defendant also had a 2012 misdemeanor conviction for resisting a peace officer; and a 2008 misdemeanor domestic battery. The ASA also reminded the court that during the pendency of this case, defendant was released on bond, and while out on bond, he was

> "arrested twice. Both times for unlawful use of a weapon by a felon. Both of those cases were charged. Both cases did go to a motion to suppress evidence. The firearms in each case were suppressed by your Honor on separate hearings. At the time of his arrest, petitions for violation of bail bond *** were filed. Even though *** the guns in those cases were suppressed and those cases dismissed, the violations of bail bond had never been withdrawn. Once the second UUW felon case was dismissed, Counsel for the defendant at the time, *** filed a petition for *** pretrial release. At that time, the State did file a petition for pretrial detention."

¶ 24    Defendant, *pro se*, asked the court to "vacate the pretrial detention order or to withdraw the violation of bail bond to reinstate the bond." Defendant asserted that he was previously "granted pretrial release and posted bail prior to the Safe-T Act went into effect," and that the Act now "provides prerequisites" for the State to file a pretrial detention petition. Defendant specifically referred to section 110-6.1(c)(1), which he explained "states that a petition may be filed without prior notice to the defendant at the first appearance before the judge, or within 21 days of the arrest and release of the defendant *** upon prior notice to the defendant." Defendant stated that he had been in custody since September of 2021, and that the State had only filed its petition in December of 2023. "That's 28 months after the deadline, and that took away the Circuit Court statutory authority *** to hear the State's motion to deny pretrial release." Defendant also

7

pointed out that the "the alleged violation cases were dismissed," and contended that, under the revocation procedures provided by the Act, if the case that resulted in the revocation is dismissed, the court was required to "hold a hearing on the conditions of release pursuant to Section 110-5, and release the defendant with or without modifications or conditions of pretrial release." In sum, defendant alleged that his detention was "unlawful, [that] the State lack[ed] the authority to file the petition due to *** untimeliness, [and that] the Court [erred] in granting the State's untimely petition."

¶ 25    After argument, the trial court found defendant's continued detention was proper, finding that the proof was evident and the presumption great that defendant committed the qualifying offense of first degree murder. The court also found that defendant poses a safety threat based upon

> "specific articulable facts in the record in that he, the defendant, approached two victims on the street, striking one with a bullet in the torso, and striking the other with five bullets resulting in death. Defendant was on video and was positively identified in the videos. Defendant was on bond for this murder case with a firearm when he picked up two individual gun cases and was found to be the owner of the gun.
>
> ***
>
> [T]he gun cases were dismissed at motion, but in considering *** the fact that he has a propensity to carry weapons, this Court heard, in fact, that he was, in fact, the owner of each of those individual weapons. The officers and the way in which they obtained those weapons may have been suppressed, but the Court *** is allowed under the Pretrial Fairness Act, [to review] the propensity of the defendant to, in

8

fact, have weapons, and that is what the Court is considering, that in combination with the murder charge that is pending with a firearm finds that the defendant is a real and present threat to the community at large.

The defendant's PSA score when this case originally came in in 2017 is a five indicating for new criminal activity. So based upon all of those factors, the defendant is not a candidate for electronic monitoring as he has picked up two individual cases that resulted in the propensity of the weapons being found on him, not that he was found guilty of those cases, but that he has the propensity to have weapons on him. He is definitely a threat to the community at large."

¶ 26     Following the hearing, the trial court entered a new written order, consistent with the findings above, denying defendant pretrial release.

¶ 27     Defendant was appointed counsel for this appeal, and on March 27, 2024, defendant, through counsel, filed a notice of appeal. Defendant's notice of appeal initially listed the trial court's order as "May 13, 2024." This court subsequently granted defendant's motion to amend the notice of appeal to reflect the correct order date of March 13, 2024.

¶ 28     Utilizing the form approved for Rule 604(h) appeals by defendants, defense counsel checked four boxes. Defendant first asserted that the "State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or presumption great that defendant committed the offense(s) charged" because "there is no indication that [defendant] made any inculpatory statements and there is presently no forensic evidence that connects [defendant] to the scene of the offense."

¶ 29     Defendant also checked the box asserting that the "State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any

9

person or persons or the community, based on the specific, articulable facts of the case." Defendant specifically argued that he "was not on parole, probation or any other form of court supervision at the time of the alleged offenses. [Defendant]'s felony background includes only non-violent, non-forcible felonies."

¶ 30    Next, counsel checked the box stating that the "State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." In the space below, counsel wrote that the State did not meet its burden because "[t]here was no indication for the record that defendant has a history of bond forfeiture warrants or a history of escape attempts. The defendant has demonstrated that he will appear for future court dates."

¶ 31    Finally, counsel checked the box labeled "Other." In the space below, counsel wrote:

> "The State petitioned the court for pretrial detention of [defendant] only after [defendant] made a request to have his original bond reinstated following the dismissal of the two criminal cases that were the subject of violations of bail bond in this matter ***. [Defendant]'s bond was set at $300,000-D on August 25, 2020 and [defendant] was released from custody after posting the requisite bond on March 5, 2021. He was subsequently arrested on the aforementioned cases and placed into custody. Following the dismissal of the two matters, [defendant] sought to have his bond reinstated and the violations of bail bond vacated and did not request a review of his detention status under the Pretrial Fairness Act. Additionally, the State's petition was untimely, as it was not filed with [*sic*] 21 days of the defendant's arrest and initial appearance pursuant to the Pretrial Fairness Act

10

nor 21 days of the effective date of the Act. The trial court's decision to allow the State to petition for pretrial detention under these circumstances violates this court's precedent *in People v. Brown*, 2023 IL App (1st) 231890. The trial court also improperly relied on those two dismissed cases in it's [*sic*] detention decision."

¶ 32    On July 18, 2024, defendant, through counsel, filed a memorandum in support of his appeal. Defendant stood on the notice of appeal as to the first three issues, submitting the memorandum to "supplement the last issue under the 'Other' category." In his memorandum, defendant argues that the State's detention petition was not timely filed, that his continued detention under the current or previous versions of 725 ILCS 5/110-6 is improper, and that the trial court erred by considering evidence in these detention proceedings that had been suppressed in separate proceedings. We will consider this last argument first, as it may be determinative of defendant's appeal.

¶ 33    However, before turning to the merits of defendant's appellate challenge, this court must consider our jurisdiction.  See *People v. Smith*, 228 Ill. 2d 95, 103-04 (2008) ("[T]he ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case."); *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009). The State asserts that this court lacks jurisdiction to consider the merits of defendant's appeal, because all the issues he raises on appeal concern the January 29, 2024 detention order, and he "does not direct any arguments against the trial court's March 13, 2024 continuing detention order aside from arguing that the order incorporated the earlier ruling for jurisdictional purposes." Because defendant did not timely appeal the January 29, 2024 detention order, the State asserts that we lack jurisdiction to consider his challenges to that order.

11

¶ 34 Defendant, however, asserts that we have jurisdiction to review "the entirety of [his] detention proceedings, including the timeliness of the State's detention petition," under Illinois Supreme Court Rule 604(h). Defendant notes that, when he filed his notice of appeal on March 27, 2024, the prior version of Illinois Supreme Court Rule 604(h) was in effect, under which he was required to file a notice of appeal within 14 days of the order being appealed. Ill S. Ct. R 604(h)(2) (eff. Dec. 7, 2023). However, on April 15, 2024, a new version of Rule 604 became effective, which eliminates the 14-day time limit, but requires the appellant, "[a]s a prerequisite to appeal, *** [to] first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Defendant contends that the Rule should be applied retroactively, and that his "Affidavit of Fact" was "basically a motion for relief as contemplated by Rule 604(h)." Defendant maintains that he "followed the requirements of the most recent version of Rule 604(h)," and, accordingly, his argument regarding the timeliness of the State's petition "is therefore reviewable by this [c]ourt."

¶ 35 We agree with the State that we lack jurisdiction over the January 29, 2024 detention order. The filing of a notice of appeal "is the jurisdictional step which initiates appellate review" and unless there is a properly filed notice of appeal, a reviewing court has no jurisdiction over an appeal and is obliged to dismiss it. *People v. Smith*, 228 Ill. 2d 95, 104 (2006). Supreme Court Rule 303(b)(2) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. Sup. Ct. R. 303(b)(2) (West 2022). A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal. *Smith*, 228 Ill. 2d at 104. A notice of appeal should be liberally construed and considered as a whole, and will be deemed sufficient when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the

12

successful litigant of the nature of the appeal. *Id.* at 104-05. Here, defendant's notice of appeal cites only the March 13, 2024, as the date of the order appealed. No matter how liberally construed, defendant's notice of appeal cannot be said to have fairly and adequately sought review of the January 29, 2024 order.

¶ 36    Although we do not have jurisdiction to consider the January 29, 2024, order, we nevertheless conclude that we can still review defendant's appellate challenge. On March 13, 2024, the court denied defendant's March 6, 2024, motion, in which defendant argued that the State's petition was untimely. Although the court did not specifically rule on the timeliness of the State's petition in its March 13, 2024 order, the issue was before the court, and this court can review the issue in determining if the trial court correctly ordered defendant's continued detention.

¶ 37    Turning to the merits of defendant's appellate challenge, defendant contends that the State's detention petition was untimely under section 110-6.1(c)(1), which provides that a petition "may be filed without prior notice to the defendant at the first appearance before a judge, or within 21 calendar days *** after arrest and release of the defendant upon reasonable notice to the defendant." 725 ILCS 5/110-6.1(c)(1) (2023). Defendant asserts that the State's petition in this case was filed on December 20, 2023, "about six years after [defendant] was initially arrested on December 26, 2017, more than three years after he was initially ordered released on August 20, 2020, *** more than two years after he was arrested on the second UUWF case on September 18, 2021[,] [and] more than three months after the effective date of the pretrial fairness act."

¶ 38    In analyzing defendant's appellate challenge, we must first determine whether the timeline of section 110-6.1(c)(1) applies to him. That question presents an issue of statutory construction, which we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 14; *People v. Rios*, 2023 IL App (5th) 230724, ¶ 8. The primary goal of

statutory construction is to ascertain and give effect to the legislature's intent. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 48. The best indication of the legislature's intent is the plain language of the statute. *Id.* In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. *People v. Donoho*, 204 Ill. 2d 159, 171-72 (2003).

¶ 39    Defendant contends that the State's petition here was untimely because defendant "was ordered released on August 20, 2020, and he was released on March 5, 2021, and the petition was not filed until December 20, 2023." Presumably, defendant's contention is that the State's verified petition to detain was due on or before March 26, 2021—21 days from March 5, 2021, before the Act became effective two and a half years later, on September 18, 2023.

¶ 40    To support defendant's contention that the 21-day timeline in section 110-6.1(c)(1) applies to him, and that the State's petition in this case was untimely, defendant relies on *People v. Brown*, 2023 IL App (1st) 231890. In *Brown*, the defendant had been given a bond under the old statute. Defendant posted bond, and was ordered to be released, but he was never released from jail "due to lack of an electronic monitoring host site." The State's verified petition was not filed at the defendant's first appearance before a judge, or within 21 days of when he was arrested and ordered released, and instead, the State filed the petition more than three months later, on September 26, 2023. *Id.,* at 13. Even though defendant's first appearance and the order for his release predated the effective date of the Act, one panel of the First District appellate court found that the State's verified petition was untimely. *Id.* The court in *Brown* acknowledged that other courts had reached different conclusions on the issue, including the court in *People v. Whitmore*, 2023 IL App (1st) 231807.

14

¶ 41    By contrast, in *People v. Whitmore*, 2023 IL App (1st) 231807, the defendant was arrested and charged with possession of an explosive or incendiary device. The defendant first appeared before a judge in December 2022, and his bond was set at $1,000,000-D, which required him to post $100,000 and submit to electronic home monitoring and GPS as conditions of bond. Defendant did not post that bond, and remained in custody. When the Act went into effect on September 18, 2023, the defendant petitioned to remove the financial conditions of his pretrial release. The State then filed a petition requesting a pretrial detention hearing the following day, and the defendant moved to strike that petition, arguing that it was untimely. The trial court denied defendant's motion to strike, and on appeal, defendant argued that the State was barred from filing a verified petition for pretrial detention, because such a petition must be filed "at the first appearance before a judge" or (2) with notice "within the 21 calendar days *** after arrest and release of the defendant ***." 725 ILCS 5/110-6.1(c).

¶ 42    The court in *Whitmore* rejected the defendant's argument that the timing requirement of section 110-6.1(c) applied to him, explaining that

> "Every defendant who was ordered to be released on monetary bond prior to trial has already had his first appearance before a judge. Nearly every defendant who was released on monetary bond has already been released for more than the 21-day limit of the statute. Thus, [the defendant]'s reading of the timing requirements of subsection 110-6.1(c) would result in a near total limit on 'the State's Attorney's ability to file a verified petition for detention'—a result contrary to the Code's express provision. 725 ILCS 5/110-7.5(a). *** [The defendant]'s interpretation would require mandatory release of every defendant given bond before the effective date of the Act, while severely limiting the trial court's ability to fully evaluate

15

some defendants because it was impossible for the State to bring a petition any earlier. This result would not 'give effect to the legislature's intent.' "

¶ 43 The court in *Whitmore* noted that the State petitioned to deny the defendant's pretrial release after the defendant moved for relief from the financial conditions of his release, and the hearing on the defendant's motion was his first appearance before a judge since the Act became effective, concluding that, in such circumstances, the State's petition was timely.

¶ 44 Following *Whitmore* and *Brown*, there has been a split in the Illinois courts as to whether a defendant's request to reopen the conditions of pretrial release triggers a new opportunity for the State to file a detention petition. Most courts have found that the State is not time-barred under these circumstances. See, *e.g.*, *People v. Haisley*, 2024 IL App (1st) 232163, ¶¶ 17-22; *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 11-33; *People v. Gray*, 2023 IL App (3d) 230435, ¶¶ 10-15; *People v. O'Neal*, 2024 IL App (5th) 231111, ¶¶ 8-18. By contrast, the same First District panel which decided *Brown*, 2023 IL App (1st) 231890, described above, subsequently reiterated that position in *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 27. The State's petition for appeal in *Watkins-Romaine* was allowed, and we await future supreme court guidance on this issue. *Id.*, *appeal allowed*, No. 130618 (Ill. June 18, 2024).

¶ 45 Despite the split of authority described above, we need not embrace either position in this case. Unlike the defendants in *Brown* and *Whitmore*, defendant in this case was in custody pursuant to a no bail order at the time the Act went into effect. Based on defendant's custodial status, we find guidance for the applicable timeline in a different subsection, which was not at issue in any of the above cases.

¶ 46 When the legislature eliminated cash bail, it anticipated that there would be confusion about how to apply the new pretrial-release provisions to pending cases where the court had

already set a monetary bond. It therefore included provisions for transitioning persons detained under the old cash-bail system to the new system of pretrial release. See 725 ILCS 5/110-7.5 (West 2022). Accordingly, section 725 ILCS 5/110-7.5, separates individuals who were arrested prior to the effective date of the Act into three different categories based on their custodial status "on or after January 1, 2023,"[1] and provides different procedures under the new Act for those who are in each category. 725 ILCS 5/110-7.5 (West 2022).

¶ 47　　The first category is any person who was released subject to pretrial conditions prior to the effective date of the Act, who "shall be allowed to remain on pretrial release under the terms of their original bail bond. This Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6.". 725 ILCS 5/110-7.5(a) (West 2022). The second category consists of any person who remains in pretrial detention after being ordered released with pretrial conditions. 725 ILCS 5/110-7.5(b) (West 2022). The statute provides that any such person is "entitled to a hearing under subsection (e) of Section 110-5." Finally, the third category consists of any other person who remains in pretrial detention, *i.e.*, those who are in pretrial detention with previously-set "no bail" orders. 725 ILCS 5/110-7.5(b) (West 2022). Any person in the third category "shall be entitled to a hearing" within different time frames based on the charged offense. As relevant here, for a person who is charged with first degree murder, "the hearing shall be held within 90 days of the person's motion for reconsideration of pretrial release conditions." 725 ILCS 5/110-7.5(b)(3) (West 2022).

---

[1] The Act's effective date pursuant to the statute was January 1, 2023.  Our supreme court later lifted a stay and set the effective date as September 18, 2023. See Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023); *Raoul*, 2023 IL 129248, ¶ 52.

¶ 48 Defendant suggests that he belongs to the first category, because he was "previously released pretrial on the condition of depositing security," and accordingly, he must "be allowed to remain on pretrial release under the terms of [his] original bail bond[.]" 725 ILCS 5/110-7.5(a) (2024). He also argues that he never filed a petition for pretrial release invoking the Act, only requesting that he be released under his original bond. We disagree.

¶ 49 Although defendant previously had orders for release with bail in 2020 and 2021, defendant was ordered to be held without bail on September 19, 2021, and he has been in pretrial detention since that time. See *People v. Brown*, 2023 IL App (1st) 231890, ¶ 20 ("[The first category] is for a different category of detainees: those who have been released on bond and who are out of jail."). Defendant stylized his motions in the trial court as requests to "reinstate bail," however, defendant's prior bail orders were no longer in effect, and a new bail order could not be entered under the Act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 5 ("The Act's pretrial release provisions center on the abolition of monetary bail."). By challenging his continued detention under the existing bond determination, defendant has elected to proceed under the Act, and he specifically sought relief under the new Act's revocation provisions. Accordingly, defendant belongs to the third category, as he was being held in pretrial detention pursuant to a "no bail" order when the Act became effective. As stated above, when a defendant in the third category is charged with first degree murder, "the hearing shall be held within 90 days of the person's motion for reconsideration of pretrial release conditions." 725 ILCS 5/110-7.5(b)(3) (West 2022).

¶ 50 From our reading of section 5/110-7.5, it is clear that a defendant belonging to the third category is not automatically granted a hearing under the Act. Instead, such a defendant needs to trigger a hearing by moving to reconsider his or her pretrial release conditions. And because it is the defendant who must trigger a hearing under the Act, the State's obligation to file a verified

petition does not arise until the defendant has done so. See *McDonald*, 2024 IL App (1st) 232414, ¶ 28 (finding the State's petition was not untimely where "defendant's filing of the pretrial release petition opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response."); *People v. Gray*, 2023 IL App (3d) 230435, ¶ 15 ("the State is permitted to file a responding petition in situations *** where a defendant (1) was arrested and detained prior to the implementation of the Act, (2) remained in detention after monetary bail was set, and (3) filed a motion seeking to modify pretrial release conditions."). A defendant in this third category is already being held in pretrial detention on a prior "no bail" order, and the State would have no reason to file a verified petition to deny pretrial release, unless and until that defendant moves to have his or her pretrial release conditions reconsidered in a hearing under the Act.

¶ 51   Here, defendant orally moved to reconsider his pretrial release conditions on December 12, 2023, and filed written motions on January 17 and 24, 2024. It was only upon defendant moving to reconsider his pretrial release conditions that the Act's requirement to conduct a hearing was triggered, requiring the State to file a verified petition. The State filed their verified petition on December 20, 2023, and the court held the initial hearing under the Act on January 29, 2024, well within the 90-day timeframe required by the Act. In these circumstances, we do not find the State's petition to be untimely.

¶ 52   Defendant next contends that the pending VOBB petitions should not result in his detention. Defendant asserts that the Act "drastically changed the law as it applies to new charges picked up while out on pretrial release" and that under section 110-6, where "the case that caused the revocation is [later] dismissed *** the court shall, without unnecessary delay, hold a hearing on conditions of pretrial release pursuant to Section 110-5." 725 ILCS 5/110-6(a) (West 2024).

¶ 53    Section 110-6, upon which defendant relies, does not apply to him, because it governs the revocation of pretrial release, "[w]hen a defendant has previously been granted pretrial release under this Section." Defendant, however, has never been subject to revocation procedures under the Act.  Instead, the State filed petitions for violation of bail bond under his murder charges, and he has been held on a "no bond" order since before the Act became effective. Those VOBB petitions remain pending, which defendant does not dispute.

¶ 54    In this case, the trial court held hearings on both December 12, 2023, and January 29, 2024, at which it considered defendant's argument that he should be released on his previous bond as a result of the two UUWF cases being *nolle prossed*. The trial court explained that it had presided over the suppression hearings, and although the evidence was suppressed based on unlawful searches, the court still found it "clear" that defendant "was in fact found to be illegally in possession of a gun" in both cases. As the trial court correctly explained, the suppression of the firearm evidence is not determinative of the State's outstanding petitions for violations of bail bond filed under section 725 ILCS 5/110-6(a) and (e) (West 2020). See 725 ILCS 5/32–10(a-5) (West 2020) ("Any person who knowingly violates a condition of bail bond by possessing a firearm in violation of his or her conditions of bail commits a Class 4 felony for a first violation and a Class 3 felony for a second or subsequent violation."); see also cases discussing the criminal offense of violation of bail bond—*People v. Tompkins*, 26 Ill. App. 3d 322, 324 (1975) ("A bail bond violation occurs even if the underlying charge is later declared invalid."); *People v. Minefee*, 14 Ill. App. 3d 796, 797-98 (1973) (the fact that defendant's conviction was later found to be void did not invalidate his conviction for violating bail in connection with that prosecution); *People v. Arnone*, 15 Ill. App. 3d 278, 279 (1973) (rejecting the defendant's argument that "because the statute under which he was initially charged was later held void, *** the indictment and conviction

for violation of bail bond, [were] also void." "Violation of bail bond is an offense separate and distinct from" the underlying offense charged). In these circumstances, we find no merit in the argument that the suppression of the firearm evidence required the VOBBs to be vacated.

¶ 55    Moreover, regardless of whether the State's petitions for VOBB remained pending, there is no question that the trial court is entitled to consider the evidence that defendant possessed firearms on two different occasions, in violation of his prior bond conditions. The "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing," and a defendant "may not move to suppress evidence" during a hearing under the Act. 725 ILCS 5/110-6.1(f)(5), (6). In evaluating defendant's dangerousness, the court is "not limited to only a consideration of the actual offenses for which defendant was convicted." *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 48. Instead, the court may consider "*[a]ny *** factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior," (emphasis added), including, in particular, evidence concerning: "[w]hether the defendant is known to possess or have access to any weapon or weapons." We also note that this court has previously concluded that a defendant's "demonstrated history of failing to abide by conditions of release" placed upon him, by possessing a weapon while he was prohibited from doing so, is relevant to a trial court's decision regarding whether any less restrictive conditions could mitigative the safety threat posed by defendant, and suggests that continued detention is necessary. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33; *People v. Walker*, 2024 IL App (1st) 240768-U, ¶ 27.

¶ 56    Finally, we address the issues raised only in defendant's notice of appeal, specifically, that the State failed to meet its burden of proving by clear and convincing evidence that the proof is

evident or presumption great that defendant committed the offenses charged, that defendant poses a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community.

¶ 57     Initially, we note that defendant frames his appellate challenges under the findings required for an initial detention order. The order that defendant appeals in this case, however, is not an initial detention order, but an order for continuing detention.

¶ 58     Indeed, this court has previously explained the difference between initial orders of detention, and orders for continued detention.  See *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 20-21. At an initial hearing, it is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3). At each subsequent court appearance thereafter, the court is required to assess whether "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5); *People v. Long*, 2023 IL App (5th) 230881, ¶ 15; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36.

> "Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the [statute] does not require the court to again make specific

findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 59 Defendant's arguments on appeal rest on the faulty premise that at the March 2024 proceeding, the State had the burden to establish the three factual findings listed in section § 110-6.1(e)(1)-(3), by clear and convincing evidence. The State, however, only needed to make those showings at the initial pretrial detention hearing in January 2024. *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37 ("subsequent determinations are not subject to every statutory requirement that applies to initial detention hearings"); *Casey*, 2024 IL App (3d) 230568, ¶ 13. To challenge whether the State made those required initial showings by clear and convincing evidence, defendant needed to timely appeal from the circuit court's January 2024 order, which, as we discussed above, he did not do. See *Hongo*, 2024 IL App (1st) 232482, ¶¶ 24-31; *Casey*, 2024 IL App 3d 230568, ¶¶ 11-13.

¶ 60 Although it was only necessary for the trial court to make a continued detention finding—that defendant's "continued detention [wa]s necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"—the court ultimately made the three findings applicable to initial detention hearings and entered an order consistent with those findings. Nonetheless, it is sufficiently clear from the record that the court believed that defendant's continued detention was necessary to protect against a real and present safety threat.

¶ 61 In other circumstances, this court has been inclined to forgive a defendant's incorrect framing of the issue, and to construe the defendant's appellate challenges as they relate to the trial court's continued detention decision. See *People v. Castle*, 2024 IL App (1st) 240669-U, ¶ 21; *People v. Hongo*, 2024 IL App (1st) 232482, ¶¶ 31-39. Here, however, defendant's challenges to

the continuing detention order must fail for a different reason—they were never raised before the trial court.

¶ 62      In defendant's notice of appeal, he argues that the State failed to meet its burden of showing that the proof is evident or presumption great that he committed first degree murder because there is no forensic evidence and he made no inculpatory statements. He contends that the State failed to meet its burden of showing that he is a safety threat because he "was not on parole, probation or any other form of court supervision at the time of the alleged offenses" and his felony background contains "only non-violent, non-forcible felonies." Finally, defendant asserted that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate that safety risk because he does not have "a history of bond forfeiture warrants or *** escape attempts."

¶ 63      None of the above arguments were raised in the trial court. During both the January and March 2024 hearings, defendant's arguments focused only on the timeliness of the State's petition, and the impact of the State's decision to *nolle pros* the UUWF charges. Defendant never contested any of the pretrial detention elements in the trial court, or the trial court's finding as to the necessity of continued detention, and he cannot do so for the first time on appeal. See *Kopf v. Kelly*, 2024 IL 127464, ¶ 77, quoting *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (" 'It is well settled that issues not raised in the trial court *** may not be raised for the first time on appeal.' "); *People v. Morgan*, 385 Ill. App. 3d 771, 773 (2008) ("Generally, a defendant's argument is forfeited on appeal if it was not raised in the trial court."); *People v. Andres*, 2024 IL App (4th) 240250, ¶ 14 (Where defendant failed to raise his appellate challenge regarding pretrial detention order in the trial court, the issue was forfeited). The purpose of rules regarding waiver and forfeiture is to "preserve finite judicial resources by creating an incentive for litigants to bring to

trial courts' attention alleged errors, thereby giving trial courts an opportunity to correct their mistakes." *People v. McKay*, 282 Ill. App. 3d 108, 111 (1996); *People v. Hunt*, 234 Ill. 2d 49, 56 (2009) ("the theory under which a case is tried in the trial court cannot be changed on review.").

¶ 64 Because defendant did not first raise the arguments in the trial court, we conclude that defendant has forfeited appellate review of the remaining challenges set out in his notice of appeal.

¶ 65 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 66 Affirmed.

*People v. Davidson*, 2024 IL App (1st) 240762

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18CR1526; the Hon. Joanne F. Rosado, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Rebecca A. Cohen, Assistant Public Defender), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Thomas Hansel, Assistant State's Attorney, of counsel), for the People. |