2024 IL App (1st) 240156-U

Fourth Division
Filed May 23, 2024

No. 1-24-0156B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County |
| | ) | |
| v. | ) | No. 24 MC1 104657 |
| | ) | |
| ROBERT BRAY, | ) | The Honorable Maryam Ahmad, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1  *Held:*  Because a 24-hour curfew as a condition of home confinement with electronic monitoring was not authorized by law, the State was not required to prove that release on that set of conditions would mitigate the threat the defendant posed to community safety.

¶ 2  Defendant Robert Bray appeals from the trial court's order denying him pretrial release. He argues that the State failed to prove that home confinement with a 24-hour curfew would not adequately mitigate the threat he poses to the safety of the community and that the court erred by not considering that as a potential condition of release. Because the law prohibits imposing home confinement with no provision for movement, we affirm the detention order.

¶ 3                                    BACKGROUND

¶ 4      Bray was arrested on January 5, 2024, and charged by complaint with vehicular hijacking and robbery.[1] At his initial appearance the next day, the State filed a petition to deny pretrial release, and the hearing was held immediately.

¶ 5      According to the State's proffer, at around 4:30 p.m. on January 2, Bray was driving his black Mercedes SUV when he rear-ended a Jeep Grand Cherokee that had stopped to wait for a pedestrian. Both drivers pulled over and got out of their cars. Bray approached the other driver and started loudly demanding money to pay for repairs before snatching the driver's identification card and telephone out of his hands. An unidentified man got out of Bray's Mercedes and, at Bray's direction, got into the Jeep and drove it away. Bray then pushed the Jeep's original driver against a wall and started punching and strangling him, causing some bruising, swelling, and scraping. The incident was captured by a police surveillance camera, and so was the license plate on the Mercedes, which allowed the police to determine that it was registered to Bray. They put together a photo array and showed it to the Jeep's original driver, and he picked out Bray's picture.

¶ 6      The State also proffered that, at the time of the charged incident, Bray was on release pending trial on a charge of unlawful use or possession of weapons by a felon. As a condition of his pretrial release, he was on electronic monitoring, and he had been allowed "movement" about a month before so he could go to work. GPS data from his ankle bracelet confirmed that he was at the scene when the charged incident took place. His criminal history recorded that he had served a five-year sentence on a 2014 conviction for aggravated battery to a police officer and a 30-month sentence on a 2020 conviction for aggravated unlawful use of a weapon. He had also been arrested in 2021 for escape from electronic monitoring.

¶ 7      According to the defense's proffer, GPS monitoring did not connect Bray to the stolen Jeep, and there was no evidence that the alleged victim sought medical attention. Bray was a lifelong

---

[1]  While this appeal was pending, the State filed a superseding indictment under number 24 CR 00967 charging him with those same two offenses as well as aggravated battery.

resident of Cook County with two children. He volunteered to go on field trips with his older child, and he lived with his younger child, who was still an infant. He was employed full-time as a packer for Crate & Barrel. He had received a GED and taken college-level classes in "electronic engineering" at East-West University, and he had recently completed a job-training program. He regularly attended church.

¶ 8    An officer representing pretrial services advised the court that, on a scale of one to six, Bray had scored a five for new criminal activity and a four for failing to appear, which meant that pretrial services recommended imposing "maximum conditions" if Bray was released.

¶ 9    In arguing that no conditions of release could adequately protect the public's safety, the State highlighted the fact that electronic monitoring had not deterred Bray from committing a violent crime "in broad daylight." The defense responded that any safety concerns could be alleviated through "more restrictive conditions," and defense counsel specifically suggested placing Bray on "electronic monitoring with no movement." The State responded to that suggestion by noting that electronic monitoring "allows for two days essential movement," during which time Bray would be able to be in public.

¶ 10    The court found that the proof was evident and the presumption great that Bray had committed the detainable offenses of robbery and vehicular hijacking. It also found that Bray's conduct in escalating a fender-bender into a robbery, a vehicular hijacking, and a beating showed that he did not merely pose a threat but was, in fact, "a danger." And based on the fact that Bray was "battering someone in a traffic stop" and "taking their property and car" despite being on electronic monitoring, the court found that there were "clearly" no conditions that could "mitigate the risk to the public." It therefore granted the State's petition to deny pretrial release. In the written order the court entered after the hearing, it elaborated that no conditions of release would be adequate because the "limited movement" Bray was restricted to at the time of the offense had still "failed to mitigate the risk of [him] committing additional violent crimes."

¶ 11                                    ANALYSIS

¶ 12     On appeal, Bray challenges the trial court's finding that no set of release conditions could mitigate the threat to public safety that his release would pose. He argues that the State failed to carry its burden on that element because it did not show that a 24-hour curfew would be inadequate, and he similarly faults the trial court for failing to consider a 24-hour curfew. The State responds that its proffer was sufficient to prove that no conditions of release would be adequate, and it contends that the trial court was not required to specifically address every conceivable condition of release. But Bray's arguments fail for a more fundamental reason, which is that—as the State noted at the detention hearing—home confinement with a 24-hour curfew is not a legally available condition of pretrial release. Because that conclusion rests on our interpretation of the relevant statutes, our review is *de novo*. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11.

¶ 13     Under the recent overhaul to our state's system of pretrial release, Bray was presumptively entitled to release pending trial. 725 ILCS 5/110-2(a) (West 2024). To overcome that presumption, the State was required to, among other things, prove by clear and convincing evidence that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article" could "mitigate *** the real and present threat to the safety of any person or persons or the community" that the court had found to exist under the particular facts of the case. *Id.* § 110-6.1(e)(3). Section 110-10(b) allows the court to, when necessary, impose conditions of release beyond the conditions that apply in every case. See *id.* § 110-10(a) (mandatory conditions); *id.* § 110-10(b) (additional conditions). It lists several possible conditions that the court can select when warranted. *Id.* § 110-10(b)(0.05) to (8). It also includes a catch-all provision that allows the court to devise and impose "other reasonable conditions" on a case-by-case basis. *Id.* § 110-10(b)(9). One of the possible conditions enumerated in subsection (b) is "home supervision *** with or without the use of an approved electronic monitoring device subject to Article 8A of Chapter V of the Unified Code of Corrections." *Id.* § 110-10(b)(5). And Article 8A, otherwise known as the Electronic Monitoring and Home Detention Law (730 ILCS 5/5-8A-1 *et*

*seq.* (West 2024)), expressly requires that all defendants who are placed on home confinement as a condition of pretrial release still be allowed a period of public movement twice per week:

> "At a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)." 730 ILCS 5/5-8A-4(A-1) (West 2024).

See also Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (adding subsection (A-1)). This provision, which section 110-10(b)(5) incorporates by reference, expressly prohibits the 24-hour curfew proposed by Bray in the trial court and again on appeal. In other words, it is not one of the possible release conditions "set forth in subsection (b) of Section 110-10." 725 ILCS 5/110-6.1(e)(3) (West 2024).

¶ 14    Because the trial court could not impose home confinement with a 24-hour curfew as a condition of Bray's pretrial release, the State was not required to prove that it would be inadequate to mitigate the threat he posed to community safety, and there was no need for the court to consider it as a potential condition before denying pretrial release. Bray articulates no other basis for reversing the trial court's order denying him pretrial release. Accordingly, we affirm.

¶ 15                                    CONCLUSION

¶ 16    Because home confinement with a 24-hour curfew was not a legally authorized condition of pretrial release, the trial court did not err by failing to consider it or by finding that it would not adequately mitigate the threat that Bray posed to the safety of the community. We therefore affirm the order denying pretrial release.

¶ 17    Affirmed.