2025 IL App (1st) 242601-U

SECOND DIVISION
March 25, 2025

No. 1-24-2601B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 24CR9425 |
| | ) | |
| RICHARD BRITO, | ) | Honorable |
| | ) | Elizabeth Rivera & |
| Defendant-Appellant. | ) | James Novy, |
| | ) | Judges Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court's order for defendant's continued detention affirmed where the evidence shows that continued detention was necessary to avoid the safety threat posed by defendant to the victim and the community.

¶ 2  Defendant, Richard Brito, appeals an order for his continued pretrial detention.

¶ 3  The record on appeal shows that on September 5, 2024, defendant was arrested and charged with two counts of aggravated vehicular hijacking and other offenses arising from an August 26, 2024, incident. Although the record on appeal does not contain the charging documents, the record indicates the first count alleged that defendant committed vehicular hijacking while carrying a

firearm, and the second count alleged that he committed vehicular hijacking while armed with a dangerous weapon other than a firearm. See 720 ILCS 5/18-4(a)(3) & (4) (West 2022).

¶ 4      The next day, on September 6, 2024, the State filed a petition for a pretrial detention hearing. A detention hearing was held that same day, before Judge Elizabeth Rivera.

¶ 5      The State proffered that on August 26, 2024,[1] at approximately 7:30 p.m., near 51st and Rockwell in Chicago, the victim went to get a few food items for his nephew and family. After getting the items, the victim decided to get a scratch off lottery ticket from a nearby liquor store. The liquor store had a camera affixed to the outside area that captured the incident.[2] As the victim walked to his car across the street, defendant, driving a white SUV, turned and stopped before striking the victim. The victim "hurried along" as defendant accelerated and parked his SUV in front of a fire hydrant. The victim and defendant exchanged words about defendant driving too fast. Defendant made threats toward the victim out of his open window.

¶ 6      Defendant then exited the SUV and approached the victim, threatening him. The victim did not want a problem, but defendant "persisted and took a bladed stance ready to physically fight." Defendant then attempted to strike the victim, who began to defend himself. Defendant struck the victim in the hand. A physical altercation ensued, until the victim caused defendant to fall to the ground.

¶ 7      The victim then walked back to his own vehicle and began to load some items inside. Defendant approached the victim's vehicle, and threatened to kill the victim and his nephew. Defendant opened the back passenger seat door of the victim's vehicle, closed it and walked around

---

[1] Although the transcript indicates that the State first asserted that the offense occurred on August 6, 2024, the State later clarified that the relevant date was August 26, 2024. The record establishes that the offense occurred on August 26, 2024.

[2] The surveillance footage was not shown to the trial court, nor is it included in the record on appeal.

the vehicle to where the victim was standing. The victim observed a "pipe-like object" in defendant's hand. Surveillance video from the liquor store confirmed that the object was a wrench. The victim ran away from the vehicle as defendant continued to threaten him. Defendant then entered the victim's vehicle and sped away.

¶ 8        The victim then went over to defendant's vehicle and unsuccessfully attempted to find the keys to prevent defendant from returning to the scene and fleeing in the car. Defendant returned to the scene on foot, and the victim ran toward the liquor store. Surveillance video showed defendant holding a large tool in his hand.

¶ 9        Later, the victim located his vehicle parked on the street at 5328 South Maplewood. Nothing was taken from the vehicle, but the victim's keys were not recovered. An evidence technician recovered a large pair of pliers that did not belong to the victim from inside the victim's car.

¶ 10        Officers later reviewed the surveillance footage and noticed a distinct design on defendant's shirt bearing the name of the company where defendant worked. Officers went to that company on September 4 and met with defendant's coworker, who identified defendant in a still photo from the surveillance footage and provided the officers with defendant's contact information. Officers located defendant and placed him into custody. Defendant was advised of his *Miranda* rights, and he identified himself in still photos recovered from the surveillance video. Defendant stated that he had a fight with the victim. The victim also identified defendant in a photo array.

¶ 11        The State then explained that defendant was a "three-time convicted felon." His criminal background included a 2012 federal conviction for unlawful transport of firearms, a 2000

3

conviction for murder, for which he was discharged from parole in 2011, and a 2000 conviction for aggravated battery involving great bodily harm.

¶ 12     The State argued that the proof was evident and presumption great that defendant committed a detainable offense, where the evidence showed that he brandished a large wrench as a weapon to threaten the victim, including threats to kill the victim, before entering the victim's car and driving it away. The State pointed out that defendant was wearing a distinctive "work shirt" at the time of the offense, and he was identified by both his coworker and the victim.

¶ 13     The State also argued that defendant posed a real and present threat to the safety of the victim, as well as the community because the evidence showed that this was "in essence, a road road-rage incident that escalated [to] threats of physical violence," including threatening to kill the victim. Defendant then took an aggressive stance, swung at and struck the victim, and threatened the victim with a large wrench. Based on the violent nature of the offense and defendant's violent criminal history, including a conviction for murder, the State argued that he posed a threat to the victim and the community.

¶ 14     Finally, the State argued that no condition or combination of conditions could mitigate the threat defendant posed. The State noted that electronic monitoring would not prevent defendant from committing another violent offense because it allows two days of unrestricted movement. Additionally, defendant's "many years in [the] Department of Corrections *** did not deter him from committing this offense."

¶ 15     A pretrial services officer informed the court as follows:

> "New Criminal Activity Scale 3; Failure to Appear Scale 2; New Violent Criminal
>
> Activity Flag, yes; PSA Score coincides with Pretrial Supervision Level 3."

4

¶ 16    In response, the defense explained that defendant's 2000 convictions were for offenses that occurred in 1997 or 1998, and the 2012 federal conviction was for an offense that occurred in 2010. The defense also noted that defendant's supervision in the federal case was "terminated early because goals were achieved." The defense further argued that it was "unknown exactly what words were exchanged," that the arrest report suggested that the victim did "not speak English," and it was unclear if the victim understood what defendant was saying.

¶ 17    The defense also contended that defendant did not pose a safety threat because his criminal background was "remote" and he had been "off parole for over a decade, since 2011," with supervision terminated early "because he completed all of the goals in the 2010 case." Defense counsel acknowledged that "the complaining witness in this case" could be considered at risk, but counsel believed there were conditions that could be imposed to mitigate that risk. Counsel argued that "GPS" and a "stay-away order," along with a "strict curfew" and electronic monitoring would keep defendant "out of the public, except for those two days of movement," and prevent him from "go[ing] back to the location of the incident or hav[ing] any contact with" the victim.

¶ 18    In mitigation, counsel stated that defendant was 44 years old, he lives with his father, and he has a daughter who he cared for. Defendant had worked as a painter for four years and was involved with "Precious Blood Ministries." Defense counsel asked that the court deny the State's petition and release defendant with "conditions that are short of detention."

¶ 19    In rebuttal, the State asserted that the evidence showed that defendant made multiple threats to kill both the victim and his nephew while repeating gang slogans. The State argued that GPS was not sufficient to protect the community from defendant because the offense was violent and "escalated from a road-rage incident," and "there may be another individual that [defendant]

encounters in a similar situation." In light of the circumstances of the offense and defendant's "very violent past," the State asked that defendant be detained.

¶ 20    In ruling, the court explained that defendant was charged with a Class X felony of aggravated vehicular hijacking, which was a detainable offense. The court summarized the evidence proffered by the State, and explained that the court also had "the incident report, arrest report, [and] the felony minutes." The court acknowledged that the reports showed that the victim "ha[d] a limited understanding of English" but it did not "mean he doesn't understand it at all." The court explained that the victim told the officers what defendant said, including that defendant was "yelling gang slogans" and "other obscenities."

¶ 21    The court also noted that the verbal altercation escalated into a physical altercation, and that the victim was struck in the hand by defendant. Defendant then walked toward the victim's vehicle with a wrench in his hand, and when the victim tried to get away, it "g[a]ve the defendant an opportunity to get into the victim's car. The defendant reversed the car and sped off." Based on this evidence, the court found that the defendant "did take the victim's vehicle, without the victim's permission," while threatening the victim "with a type of weapon." Accordingly, the court found that the State "met their burden on the first prong that the defendant committed the offense of aggravated vehicular hijacking."

¶ 22    The court also found that defendant posed a threat to the victim and the community. The court acknowledged that defendant's criminal history was not recent, however, he "does have that history of violence." The court further stated, "what I find aggravating, actually, is *** how random this was." The court noted that defendant and the victim did not know each other, and that the incident began when the victim, who was "just was walking out of [a] convenien[ce] store," encountered defendant, and defendant's actions "continued to escalate as the victim was trying to

*** deescalate the situation trying to get away *** from the defendant." The court reiterated that the victim and defendant did not know each other, expressing that defendant was a risk to the community because "this could have happened to anybody who happened to be at that place at that time."

¶ 23    Finally, the court found that no condition or combination of conditions would mitigate the risk defendant posed. The court explained that with electronic monitoring, defendant would have two days of movement, and during those days defendant could "be driving a car and get upset with somebody else." Based on defendant's "actions and escalation of his actions and his words," the court did not believe defendant "would comply with any conditions of pretrial release that [the trial court] would impose on him."

¶ 24    The court entered a written order that same day, consistent with the above findings, concluding that the State had shown "by clear and convincing evidence that" the "proof is evident or the presumption great that the defendant has committed an eligible offense listed in 725 ILCS 5/110-6.1(a)(l)-(7)," that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and that no condition or combination of conditions could mitigate the threat based on the specific articulable facts of the case.

¶ 25    Defendant did not file a notice of appeal from the trial court's September 6, 2024, order.

¶ 26    Thereafter, on October 18, 2024, defense counsel filed a petition for pretrial release. Counsel noted that in a prior detention hearing, Judge Rivera found that the State had met its burden to detain defendant. Defense counsel argued, however, that the facts showed that "the incident began with the alleged victim walking in front of [defendant]'s car," that "both men exchanged words with each other," and "it's the defendant's position that the evidence will show

7

that both men exchanged physical blows with each other, ultimately resulting with the alleged victim forcing [defendant] onto the ground." Defense counsel further argued that the victim was "never removed / forced from his vehicle" and the "vehicle's keys were also not taken by force." Counsel also noted that, although the first count alleged that defendant committed vehicular hijacking while armed with a firearm, there was no evidence that defendant was "armed with a firearm" at the time of the offense. Finally, counsel stated that the State's petition to detain was "facially defective" because it stated that defendant was discharged from parole for his murder conviction in 2021, when he was actually discharged in 2011. Based on the above, counsel requested that the court review defendant's "current detention status and find that there are conditions that this Court can fashion to ensure compliance with [defendant]'s return to court, as well as ensuring the safety of the alleged victim, and the community at large."

¶ 27    Judge James Novy held a hearing on defendant's motion that same day. At the hearing, defense counsel argued that the evidence showed that defendant and the victim "engaged in what seems to be a mutual combat situation to the point that the alleged victim in this case takes [defendant] to the ground." Counsel noted that there "was an allegation that [defendant] then removed a wrench from his vehicle and approached the victim's vehicle." Counsel argued, however, that there was no "force or threat of force" as required to establish aggravated vehicular hijacking, because the victim "was not in his vehicle when the vehicle was taken rather he was outside of his vehicle" and "[t]he keys were not removed from the alleged victim's person, they were already in the vehicle." Counsel also explained that one of the charges was for aggravated vehicular hijacking with a firearm, but that there was no evidence that a firearm was used during the offense. Counsel asserted that there was no indication that defendant had previously failed to appear for any court dates, and counsel did not believe defendant "is any type of danger to the

community." Accordingly, counsel requested that the court grant the defense's petition to release defendant.

¶ 28    In response, the State set forth a proffer of the evidence consistent with that provided at the September hearing. The State further explained that, according to the police report, the victim told police that defendant had a metal object in his waistband at the time of the offense, which the victim believed was a firearm. Although defendant did not brandish the firearm, "that is where the firearm charge arises from."

¶ 29    The State further asserted that defendant was a danger based on the "facts of this case" and defendant's "egregious" criminal background. The State explained that defendant was convicted of federal unlawful transportation of weapons in 2010, and murder in 2000. The State further explained that defendant's conviction for aggravated battery in 2000 was "reduced from attempted murder," and was based on defendant "stabbing a fellow inmate" while he was awaiting trial on the murder charge.

¶ 30    As to the third prong, the State argued:

> "based on the violent nature of the defendant's past as well as the violence in this case there are no set of circumstances to ensure the safety of the victim in this case or the public. On electronic monitoring the defendant would have two free days of unmonitored movement which the defendant can go out and commit further crimes of violence and honestly the People are concerned for the safety of other members of the Cook County Department of Corrections based on the defendant's background. So, Judge, at this point we strongly request *** this court to detain the defendant."

¶ 31    In reply, the defense acknowledged that there was a report that indicated that the victim had informed police that defendant had a firearm in his waistband. Counsel stated, however, that the victim's statement was "days later," that the surveillance video did not show a firearm, and that the circumstances showed that the victim kept "embellishing" his "story." Defense counsel also argued that "if the [S]tate is so concerned about the safety of the other individuals in the Cook County jail then [defendant] shouldn't be in the Cook County jail."

¶ 32    In ruling, the court stated that it had "reviewed the petition, the motion as well as the exhibits." The court found that the "presumption is great that the defendant committed the offense" of aggravated vehicular hijacking while armed with a dangerous weapon other than a firearm, as set out in Count 2. The court clarified that it was not "not making any kind of determination with respect to" Count 1 involving a firearm. The court was not sure that there was "clear and convincing evidence" to support that count, "but that will be an issue at trial."

¶ 33    The court also found that defendant posed a "real and present threat to the safety of" both the victim and the community, "based on the conduct alleged in the proffer." The court continued:

> "It's also this court's finding that there is no condition beyond detention that can mitigate the real and present threat that the defendant poses. I don't think electronic home monitoring [is appropriate] based on the allegations that are set forth in this as well as the defendant's significant criminal history of violence. *** [J]ust a murder case in of itself is enough but certainly the aggravated battery when you are talking about stabbing people in the jail as well as the other gun case that the defendant had is sufficient and I think the only way we can protect the public is to make sure that the defendant is in the Cook County Department of Corrections awaiting trial."

10

¶ 34    The criminal disposition sheet entered that day indicates that a detention hearing was held, that defendant's petition was denied, and that defendant was to remain detained.

¶ 35    Thereafter, on November 12, 2024, defendant filed a motion for relief under the Pretrial Fairness Act, which was amended on November 26, 2024. Defendant argued that the court erred in denying his petition for release because "the State did not prove and the Court did not find that, by clear and convincing evidence, that the proof was evident that [defendant] committed" the offenses. Defendant argued that there was "no firearm present during the mutual altercation," and that the  victim's "vehicle keys were already within his vehicle, despite [the victim] not being within his vehicle." Defendant further contended that the circumstances did not support "the allegation that [defendant] 'took the vehicle by force,' as required by the aggravated vehicular hijacking statute."

¶ 36    Defendant also maintained that there was no clear and convincing evidence that he posed a threat to the safety of the victim or the community. He acknowledged that his criminal background "does contain violent offenses," but argued that the violent offenses were remote, and that his background was "wholly devoid of any violence following those convictions."

¶ 37    Finally, defendant asserted that "the State did not prove, nor did the Court support its findings as to why there was no set of conditions that the Court could fashion that would allow [defendant] to be released from custody." Defendant argued that the State's contention that he would have two days of "unmonitored" essential movement was "blatantly false" because "all the electronic monitoring devices are GPS enabled" and the court "has the ability to limit the days/times of *** any essential movement," including "start[ing] [defendant] out with no movement, to ensure there are no violations" before "granting some additional freedoms."

11

¶ 38    At a hearing on November 26, 2024, the court denied defendant's motion for relief.  The court stated that it believed that the prior decision to detain was "proper." The court:

> "recognize[d] that there's some issues as to whether or not there was a firearm there and that's going to be something the State is going to have to handle but there was sufficient evidence or a sufficient proffer regarding Count 2 which is also a Class X felony and I think that the community needs to be made safe from [defendant] based on his conduct and his background so I'm going to respectfully deny [defendant's] motion."

¶ 39    Defendant filed a timely notice of appeal from that order.

¶ 40    Defendant did not file a memorandum with this court, choosing instead to stand on the arguments he made in his November 26, 2024, amended motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (the motion for relief will serve as the appellant's argument on appeal, and an appellant may, but is not required to, file an additional memorandum in support). Accordingly, we will review the arguments set forth in defendant's motion for relief as his challenges in this appeal.

¶ 41    Specifically, and as set forth above, in defendant's amended motion for relief he argued that the State had not adequately shown clear and convincing evidence that defendant committed a detainable offense because no firearm was present, and because the evidence did not show that he "took the vehicle by force" when the keys were inside the vehicle and the victim was not. Defendant also contended that he does not pose a threat to the safety of the victim or the community because the violent offenses in his criminal background occurred many years ago. Finally, defendant asserted that there were conditions short of detainment that could have been imposed by the court, when the court could have ordered defendant to be released on electronic monitoring

"with no movement, to ensure there are no violations" before deciding to permit "additional freedoms."

¶ 42    Initially we note that defendant frames his challenges to the trial court's order under the findings required for an initial detention order. The order defendant appeals, however, is not an initial detention order, but an order for continuing detention.

¶ 43    This court has previously explained the difference between initial orders of detention, and orders for continued detention. See *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 20-21. Ordinarily, a court holds a pretrial detention hearing "[u]pon verified petition by the State," at the first appearance before a judge, or within 21 calendar days (725 ILCS 5/110-2 (West 2022)), at which time, it is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3). At each subsequent court appearance thereafter, the statute "imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. Specifically, the court is required to assess whether "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022); *People v. Long*, 2023 IL App (5th) 230881, ¶ 15; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36.

> "Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk

by conditions of release, the [statute] does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 44    The finding at a continued detention hearing is "a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14; see also *People v. Cervantes*, 2024 IL App (4th) 240624-U, ¶ 18 ("Because all pretrial detention decisions involve common considerations of ensuring public safety and assuring defendants' appearance in court, a section 110-6.1(i-5) finding naturally shares commonalities with the State's burden at the initial detention hearing pursuant to section 110-6.1(e), but the analyses are not identical."). Where, as here, the trial court conducted the continuing detention hearing like an initial hearing, and found "that the State presented clear and convincing evidence on all three elements required by section 110-6.1(e), that finding necessarily encompass[es] the continued detention finding required by section 110-6.1(i-5)." *Thomas*, 2024 IL App (1st) 240479, ¶ 14.

¶ 45    Under the recent Supreme Court decision in *People v. Morgan*, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54. Although *Morgan* involved an initial petition for detention, and not a continued-detention determination, its reasoning also applies to hearings on continued detention where the parties proceed solely by proffer, and accordingly, we will review the circuit court's findings *de novo*. See *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21; *People v. Salley*, 2025 IL App (1st)

14

242240-U, ¶ 22.

¶ 46     Defendant's arguments in this appeal all rest on a faulty premise that at the October 18, 2024, proceeding, the State had the burden to establish the three factual findings listed in section § 110-6.1(e)(1)-(3), by clear and convincing evidence. However, as explained above, the State only needed to make those showings at the initial pretrial detention hearing, which occurred on September 6, 2024. *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37 ("subsequent determinations are not subject to every statutory requirement that applies to initial detention hearings"); *Casey*, 2024 IL App (3d) 230568, ¶ 13. Defendant did not appeal that order.

¶ 47     We also note that the arguments made by defendant at the continued detention hearing were all based on information that was previously heard and considered by the court at the initial detention hearing, when it first determined that detention was appropriate. Unlike the initial decision on pretrial detention, which begins with the presumption the defendant should be released, (see 725 ILCS 5/110-2(a) (West 2022)), a decision on continuing detention "starts from the premise that detention was necessary to guard against" the safety threat defendant posed to society or the community, "and [then] asks whether anything has changed such that a defendant's detention is no longer warranted." (*Thomas*, 2024 IL App (4th) 240479, ¶ 14 (citing 725 ILCS 5/110-6.1(i-5) (West 2022))). Because defendant presented no new information to conclude that a change to his previous detention order could be warranted, our analysis could end there. See *People v. Walton*, 2024 IL App (4th) 240541, ¶ 29 ("If a court has found that a defendant qualifies for detention and no new information or change in circumstances is presented, it makes little sense to think that court would reverse its prior ruling for no particular reason.").

¶ 48     Nevertheless, based upon our *de novo* review, we agree with the trial court's conclusion that defendant's continued detention is necessary to avoid a real and present threat to the safety of

15

the victim and the community. The State's proffer established that defendant almost struck the victim with his vehicle, and a verbal altercation ensued. Defendant exited his car and approached the victim while making verbal threats, and struck the victim in the hand. Defendant then followed the victim, and continued to threaten him, including threatening to kill him and his nephew, while holding a wrench in his hand. When the victim ran away, defendant entered the victim's car and drove away. These facts combined with defendant's criminal history demonstrate that defendant continues to pose a real and present threat to the victim and the community. Although two of defendant's convictions are from many years ago, the egregious nature of those offenses—murder and stabbing a fellow inmate—outweigh their remoteness.

¶ 49    We are unpersuaded by defendant's arguments that the lack of evidence that defendant used a firearm during the offense, or the fact that defendant took the vehicle while the victim was standing outside of it with the keys inside, indicate that defendant did not commit the charged detainable offense. First, as explained above, the question of whether the State met its burden to show clear and convincing evidence that defendant committed a detainable offense is an issue for an initial detention hearing, and is not necessary at a continued detention hearing, like the one at issue here. Nevertheless, defendant's arguments are meritless because the trial court did not find that he was eligible for detention under Count 1, involving a firearm. Instead, the court found that there was sufficient evidence that defendant committed aggravated vehicular hijacking with a dangerous weapon other than a firearm, under Count 2. Moreover, the State's proffer established that defendant was armed with a wrench while he walked toward the victim, and verbally threatened to kill him and his nephew. After the victim ran away from his vehicle, defendant jumped into the victim's car and sped away. Although such a determination is not required at this stage, based on the evidence presented we would find that the State met its burden to show, by

clear and convincing evidence, that the proof is evident or presumption great that defendant knowingly took the vehicle from "the person or the immediate presence of" the victim, "by the use of force or by threatening the imminent use of force," while "carr[ying] on or about his *** person, or ** otherwise armed with a dangerous weapon, other than a firearm." 720 ILCS 5/18-3 & 18-4 (West 2022).

¶ 50    We also reject defendant's argument that the court could have ensured the safety of the victim and the community by ordering release "with no movement." Article 8A, otherwise known as the Electronic Monitoring and Home Detention Law (730 ILCS 5/5-8A-1 *et seq.* (West 2022)), expressly requires all defendants who are placed on home confinement as a condition of pretrial release to be allowed a *minimum* period of public movement twice per week. See 730 ILCS 5/5-8A-4(A-1) (West 2024) ("At a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)." This provision expressly prohibits the trial court from imposing the condition of release proposed by defendant, and accordingly, we would find no error in the court's failure to impose it. See *People v. Bray*, 2024 IL App (1st) 240156-U, ¶14 ("Because the trial court could not impose home confinement with a 24-hour curfew as a condition of [the defendant]'s pretrial release, the State was not required to prove that it would be inadequate to mitigate the threat he posed to community safety, and there was no need for the court to consider it as a potential condition before denying pretrial release."). Based on the circumstances presented in this case, we would also conclude that no condition or combination of conditions could mitigate the safety threat posed by defendant.

¶ 51    In sum, based on our *de novo* review of the record in this case, we conclude that defendant's continued detention is necessary "to avoid a real and present threat to the safety of any person or

persons or the community, based on the specific articulable facts of the case." See 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 52    For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 53    Affirmed.