2025 IL App (1st) 251515-U

No. 1-25-1515B

First Division
November 3, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24 CR 12185 |
| SAVON LEARY, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Michele Pitman, Judge, Presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1  *Held*: We affirm the circuit court's judgement ordering defendant's continued pretrial detention where continued detention is necessary to avoid the safety threat posed by defendant to the victim and the community.

¶ 2  Defendant Savon Leary appeals from the circuit court's denial of pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(j), 110-6.6 (West 2024)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), and Public Act

102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Defendant contends that the State failed to carry its burden of proving by clear and convincing evidence that (1) the proof is evident or the presumption great that he committed a detainable offense; (2) he poses a real and present threat to the safety of any person or the community, based on specific, articulable facts of the case; and (3) no condition or combination of conditions could mitigate this threat. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On November 9, 2024, defendant was arrested and charged with, among other things, criminal sexual assault by the use of force against a juvenile victim. On November 11, 2024, the State filed a petition seeking defendant's pretrial detention. Prior to the hearing on the State's petition, Pretrial Services completed a Public Safety Assessment (PSA) of defendant. The PSA rated defendant's "new criminal activity score" as a 4 out of 6 with a flag for "new violent criminal activity." The PSA also rated defendant as a 3 out of 6 on the "failure to appear" scale. Finally, the PSA stated that, if defendant were to be released, "maximum conditions" should be imposed.

¶ 5       The hearing on the State's petition was held on November 11, 2024, before Judge Caroline Glennon-Goodman. At the hearing, the State presented the following evidence through proffer. The victim and defendant became acquainted through a dating application called Whizz. The victim's profile indicated that she was 18 years old, although her actual age was 16. Defendant's profile indicated that he was in his early 20s, although he was in fact 30.

¶ 6       On or about November 9, 2024, the victim left her mother's house after an argument. After consuming alcohol and smoking with friends, the victim arranged to be picked up by defendant. Defendant subsequently picked the victim up in Naperville and drove her to his mother's residence in Calumet City, where the alleged assaults occurred.

¶ 7    The State alleged that defendant assaulted the victim three times over the course of approximately 24 hours, including multiple acts of vaginal penetration against the victim's will. Defendant also forced the victim to perform oral sex on him until she vomited. Thereafter, the victim and defendant fell asleep.

¶ 8    The following morning, defendant again penetrated the victim. When defendant briefly left the residence, the victim went to the bathroom and observed that she was bleeding from her vagina. Defendant instructed the victim to place her clothes in the washing machine and provided her with some of his clothing to wear.

¶ 9    Around noon, defendant took the victim outside while he smoked a cigarette. Ring doorbell footage captured the encounter, which, according to the State, depicts the victim attempting to lean toward the camera before defendant covers it with his hand. After returning inside, defendant slapped the victim and again sexually assaulted her.

¶ 10    In between the assaults, the victim texted a friend, sharing her location and describing what had occurred. During a subsequent "FaceTime" call, the friend observed defendant asleep in the background. The friend then contacted the police and relayed the victim's location.

¶ 11    At approximately 4:30 p.m., police arrived at the residence and detained defendant. Officers searched the residence pursuant to a warrant and recovered bedding, clothing, and a towel from the bathroom. The victim was transported to Advocate Christ Hospital, where a sexual assault kit was administered; however, the results of that kit had not yet been returned by the time of the detention hearing. The victim identified defendant in a photo array. Defendant initially denied any sexual contact but later admitted to having sex with the victim, claiming it was consensual.

¶ 12    The State additionally proffered that defendant has a 2017 conviction for aggravated unlawful use of a weapon, two misdemeanor convictions, a "6-303" (driving while driver's license

or privilege to operate a motor vehicle is suspended), a prior bond forfeiture, and a DUI. Defendant also had a 2019 conviction from Florida for attempted lewd and lascivious behavior, which involved attempted sex with a 14-year-old victim and required defendant to register as a sex offender.

¶ 13    The State argued that the proof was evident and the presumption great that defendant committed the offenses, that he posed a real and present threat to the victim and to the community, and that no condition or combination of conditions could mitigate this threat. Regarding the conditions factor, prosecutors specifically argued that electronic monitoring would not prevent defendant from using the internet to target minors or from inviting victims into the same residence where the assaults occurred.

¶ 14    Defense counsel countered that the victim misrepresented her age on the dating app, that she had opportunities to leave, and that no corroborating medical evidence of injury had been presented. Counsel highlighted defendant's family ties, employment, and church membership and offered electronic monitoring as a suitable alternative.

¶ 15    Following the hearing, Judge Glennon-Goodman concluded that the State had met its burden to detain defendant. The court noted that while the victim purported to be 18 and willingly came to defendant's house, the State's proffer supported a finding that the defendant had committed sexual acts on the victim against her will. Regarding the real and present threat prong, the court found that the victim's injuries were documented; and, further that defendant's behavior was "predatory" in that he had gained the victim's trust, knowing that she was having problems at home. The court emphasized the victim's age, the nature of the force used, defendant's previous violation of probation, and defendant's prior sex offense. In particular, the court observed that the allegations in the present case are a violation of the terms of defendant's registration as a sex

offender. The court also noted that defendant picked up the victim "from somewhere near her home or at her home" which increased the safety risk to the victim. The court determined that electronic monitoring would not prevent defendant from continuing predatory conduct because he would still have "movement at specific times," but the remainder of the time, he would be confined to his home where the where the alleged incident occurred.

¶ 16     On January 24, 2025, defendant filed a petition to reconsider his pretrial detention. Before Judge Michele Pitman, defendant argued that his prior convictions were nonviolent, that he suffered from epilepsy, seizures, and hypertension, and that he had six children and strong ties to the community. Defendant submitted character reference letters and asserted that he could comply with GPS monitoring. No transcript of a January 24, 2025, hearing appears in the record. However, an order entered by Judge Pitman on that same date states defendant was to "remain in custody" and that "continued detention is necessary."

¶ 17     On July 14, 2025, defendant again sought release through a "Petition for Relief and Pretrial Release." In support, defense counsel highlighted defendant's educational pursuits at ITT Technical Institute, self-employment, family and community ties, and ongoing medical conditions, including epilepsy, high blood pressure, and a minor seizure disorder. Defendant further argued that the State failed to meet its burden under any of the three prongs required for pretrial detention.

¶ 18     Under the first prong, defendant asserted that the State did not establish proof of the offense because the court did not consider that both the victim and her mother allegedly lied to police about the argument that caused the victim to leave her mother's home. Defendant also maintained that certain unspecified "inconsistencies" between the proffer and the victim's text messages with defendant prevented the State from proving that he committed the charged offenses.

¶ 19    Regarding the second prong, defendant contended that the State failed to show that he posed a real and present threat to the safety of any person or the community, emphasizing that his prior convictions were nonviolent and that the sexual activity at issue was consensual. As to the third prong, defendant argued that the State failed to demonstrate that no condition or combination of conditions could mitigate any potential risk. He proposed that electronic monitoring, a curfew, and GPS monitoring would sufficiently address any safety concerns.

¶ 20    The State responded that discovery had been completed and that the available evidence against defendant was now more substantial than at the initial detention hearing. The State emphasized that DNA testing from the sexual assault kit linked defendant to the assault and that defendant made videotaped admissions acknowledging sexual contact with the 16-year-old victim. The State further asserted that defendant's previous conviction involving meeting a 14-year-old victim for sex demonstrated a continuing pattern of predatory behavior. Thus, the State maintained that defendant posed an ongoing danger to the community and that less restrictive conditions such as electronic monitoring would not adequately ensure public safety or prevent further harm as defendant knows where the victim or "where about her family lives."

¶ 21    Prior to ruling, Judge Pitman asked that the State proffer the evidence relied upon to support defendant's initial detention. Following the State's proffer, Judge Pitman reaffirmed the detention order. The court stated that the DNA evidence and defendant's admissions corroborated the victim's account, and that defendant posed a continued danger to the victim and other minors in the community. The court rejected electronic monitoring, reasoning that it would not adequately prevent future predatory conduct because it would confine defendant to the very location where the alleged assaults occurred in this case. The judge stated that the "State met their burden in that the defendant will continue to be detained, and that continued detention is necessary."

¶ 22    On July 28, 2025, defendant filed a notice of appeal, utilizing the form in effect until April 15, 2025. In the space provided on the form for the "Date(s) of Order(s) Appealed," defendant indicated  July 14, 2025, and identified Judge Pitman as the judge presiding. On August 25, 2025, this court granted defendant's motion to file an amended notice of appeal to permit his utilization of the "new correct form." The new form does not query for the date of the order appealed but instead provides space for the "Date of Order on Motion for Relief*." Defendant identifies July 14, 2025, in that space and, again, Judge Pitman as the judge presiding. The amended notice was attached to the motion.

¶ 23    On September 17, 2025, defendant filed a notice in lieu of a Rule 604(h) memorandum.[1]

¶ 24                                II. ANALYSIS

¶ 25    Before proceeding with our analysis, we first consider our jurisdiction. The filing of a notice of appeal " 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2006) (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). Illinois Supreme Court Rule 303(b)(2) (eff July 1, 2017), provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." The notice confers jurisdiction to consider only the judgment or parts thereof specified therein. *People v. Davidson*, 2024 IL App (1st) 240762, ¶ 35. Pursuant to Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), the notice of appeal from orders granting or denying pretrial release shall describe the relief requested and the grounds for the relief requested.

---

[1] See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (the motion for relief will serve as the appellant's argument on appeal, and an appellant may, but is not required to, file an additional memorandum in support).

¶ 26    In his initial notice of appeal, defendant identified the court's July 14, 2025, order as the ruling from which this appeal is taken and Judge Pitman as the judge who entered the order. In the amended notice, defendant identifies July 14, 2025, as the date of the order on his motion for relief and Judge Pitman as the judge who entered the order on the motion. In the opening paragraph of his "Notice in Lieu of Rule 604(h) Memorandum," however, defendant asserts, for first time, that he "also appeals the denial of his pretrial release that was initially entered on November 11, 2024."

¶ 27 Defendant's failure to include the court's November 11, 2024, initial detention order in his notice of appeal, deprives this court of jurisdiction to consider it.[2] Accordingly, we confine our review to the court's July 14, 2025, denial of defendant's Petition for Relief and Pretrial Release and the arguments as set forth therein.  See *Davidson*, 2024 IL App (1st) 240762, ¶ 35 (where the defendant's notice of appeal cited only the March 13, 2004, continued detention order as the date of the order appealed, the defendant's notice of appeal, even liberally construed, could not be said to have sought review of the January 29, 2004, initial detention order). The sole issue before this court is therefore whether the trial court erred in ordering the defendant's continued detention.

¶ 28    Under the Code, all criminal defendants are presumed eligible for pretrial release.725 ILCS 5/110-6.1(e) (West 2024). That presumption is overcome only if the State can prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community based on specific, articulable facts of the case; and (3) no condition or combination of conditions on the defendant's pretrial release can mitigate that threat. *Id.*

---

[2] We recognize that, in his amended notice of appeal, defendant has identified November 11, 2024, among the several other dates on which hearings regarding pretrial release occurred (11/11/24, 12/6/24, 1/24/25, 7/11/25,7/14/25).  However, the notice identifies only July 14, 2025, as the order from which the appeal is taken.

¶ 29    Where, as here, the parties proceed at the initial detention hearing solely by proffer, our review of the circuit court's detention decision is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. In such cases, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 30    Prior to *Morgan,* in reviewing a continued detention decision, this court had held that we review such decisions for an abuse of discretion. *People v. Walton*, 2024 IL App (4th) 240541, ¶ 40; *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 16; *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13. Since the decision in *Morgan*, however, some divisions of this court have applied the *de novo* standard to continued detention decisions. *People v. Williams*, 2025 IL App (1st) 242594-U,¶ 15; *People v. Brito*, 2025 IL App (1st) 242601-U, ¶ 45; *People v. Walker*, 2025 IL App (1st) 242464-U, ¶ 10; *People v. Salley*, 2025 IL App (1st) 242240-U, ¶ 22; *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21. Conversely, in *People v. Mansoori*, 2025 IL App (1st) 250481-U, ¶¶ 28-33, another division of this court reasoned that despite the holding in *Morgan*, the appropriate standard of review for continued detention decisions remains the abuse of discretion standard employed by the court in *Casey* and *Thomas*.

¶ 31    Here, the State asserts that the standard of review is abuse of discretion. We believe, however, that the same reasoning applied by the court in *Morgan* in deciding the standard of review at the initial detention proceeding should apply when the parties proceed entirely by proffer at a continued detention proceeding. See *Brito*, 2025 IL App (1st) 242601-U at ¶45. Accordingly, we review the trial court's decision to continue defendant's detention *de novo.*

¶ 32    As we earlier stated, defendant elected not to file a memorandum but has instead filed a Notice in Lieu of Memorandum, asserting therein his intention to stand on the arguments in his

Petition for Relief and Pretrial Release. Accordingly, we will review the arguments set forth therein. We note in that regard that defendant's challenge to the court's continued detention determination relies on the same three factors applicable in an initial detention determination.

¶ 33    In his petition, defendant first argues that "under the first prong," at the time of the initial hearing the court did not hear that either the victim or her mother lied to police regarding the situation that led to the victim being on the street and locked out of her home. He maintains that there are "so many inconsistencies" with the State's potential witnesses that the "proof is not evident nor the presumption great" that he committed the charged offenses. Defendant next argues that "[u]nder the second prong," the State failed to show that he poses a threat to the safety of any person or persons in the community or that there is a likelihood of flight. In support, he argues that he has no violent convictions in his background. Regarding the Florida case, the most that can be argued is that he was guilty of an attempt, but not actual violent conduct. Further, he disputes that he is a threat to the victim because she consented to any intimate activity between them. And, with respect to flight, he maintains that he has significant ties to the south suburban Chiago area and has no "significant record of failure to appear in court." Finally, "[u]nder the third prong," defendant argues that he has children, a job, and a home where can remain on electronic home monitoring which will restrict his ability to travel outside of his home. Additionally, he argues that the court can place him on a curfew or GPS to monitor his proximity to the victim. Such restrictions are much less restrictive and would allow him to work and support his children and family while keeping the public safe.

¶ 34    In response, the State notes that, as discovery in the case had been completed, the evidence against defendant at the continued detention hearing was stronger than what was presented at the initial detention hearing. Specifically, since the initial hearing, the State had obtained videotaped

statements made by defendant in which he admitted to having sexual intercourse with the victim; a sexual assault kit that confirmed the presence of defendant's DNA; extractions of cell phone calls that corroborated the conversations between defendant and the victim; and police reports from the 2019 Florida case in which defendant was convicted of a felony offense involving traveling to meet a minor for a sexual act. Additionally, on the trial court's direction, the State proffered evidence substantially similar to that which was presented at the initial detention hearing.

¶ 35    As this court has previously noted, there is a significant difference between initial orders of detention and orders for continued detention. See *People v. Hongo*, 2024 IL App (1st) 232482, ¶¶ 20-21. On an initial petition for pretrial detention, the State bears the burden of proving by clear and convincing evidence that (1) the presumption is great or the proof is evident that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety to any person or the community, based on the specific and articulable facts of the case; and (3) no condition or combination of conditions can mitigate the threat the defendant poses or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2 (West 2024). For a continued detention, the Code "does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required by the initial hearing." *Casey*, 2024 IL App (3d) 230568, ¶ 13. Rather, a court presiding over a continued detention hearing must decide whether the State has meet "a less demanding standard" of proving that the defendant's continued detention is necessary to mitigate the danger he posed to any person or the public or his risk of flight from prosecution. *Thomas*, 2024 IL App (1st) 240479, ¶¶ 13-14.

¶ 36    At the continued detention hearing in this case, the trial court invited and considered the State's evidence as presented in support of its petition at the initial detention hearing. In our *de novo* review of the trial court's decision to continue detention, we focus only on whether, based

on the specific articulable facts of this case, continued detention is necessary either to avoid a real and present threat or defendant's willful flight from prosecution. *Id.* Based upon the evidence presented, we believe continued detention is warranted.

¶ 37    In reaching this conclusion, we are mindful that this offense was commenced with the use of an online dating application, which permitted defendant to develop this young victim's sense of trust and served as the impetus for their in-person meeting. Extractions of cell phone conversations between defendant and the victim formed a part of the State's corroborative evidence of defendant's criminal activity. If released, defendant would have unfettered access to the internet and cell phones, which is all he would need to lure other victims to his residence in order to commit similar crimes. None of the less restrictive conditions suggested by defendant, be it GPS, electronic monitoring, or a curfew, would prevent his future improper use of electronic devices to exploit minors for sexual purposes. Further, and again, this is a defendant who has already violated the terms of probation. Indeed, at the time defendant was arrested in the present case, he was a registered sex offender who had already been convicted of sexual misconduct against a different minor. This fact, standing alone, is the biggest indicator of the need for defendant's continued detention. Further, the record reflects that defendant was the subject of a prior bond forfeiture, which is yet another factor which supports the propriety of the court's order of continued detention. Taken together, these facts indicate clearly that defendant's release would present a real and present threat to the safety of any person or persons or the community.

¶ 38                                III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court.

¶ 40    Affirmed.